UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN CHRISTIAN WILSON,

          Plaintiff,

    v.

FEDERAL BUREAU OF INVESTIGATION,

          Defendant.

Civ. A. No. 22-3062 (ABJ)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

## Table of Contents

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.  The Bureau Conducted an Adequate Search for Potentially Responsive Records. ............. 7

II.  The Bureau Properly Withheld Material Under FOIA Exemptions 6 and 7(C). ........... 10

A.  Standards Governing FOIA Exemptions 6 and 7(C)................................................. 10

B.  The Bureau Has Satisfied the Threshold Exemption 7 Showing………………………12

III.  The Court Should Uphold the Bureau's Withholdings Relying on Exemption 7(E)..... 16

IV.  The Bureau Has Produced All Reasonably Segregable, Non-Exempt Material. ........... 17

V.  The Bureau Has Properly Asserted a *Glomar* Response................................................. 18

A.  National Security or Intelligence Records................................................................ 19

B.  Records that Would Identify Individuals in the Witness Security Program............... 21

C.  Records that Would Identify Individuals on a Watchlist ........................................... 22

D.  Records that Could Endanger the Life or Physical Safety of Confidential Sources .. 23

CONCLUSION.................................................................................................................... 24

Defendant the Federal Bureau of Investigation ("Bureau" or "FBI") respectfully moves for summary judgment in its favor under Federal Rule of Civil Procedure ("Rule") 56.  As support for its Motion, Defendant states as follows:

## BACKGROUND

### I.    Plaintiff's FOIA Request and the Bureau's Search Methodology

Plaintiff submitted the Freedom of Information Act ("FOIA") request at issue to the Bureau on May 20, 2022, seeking several categories of records pertaining to himself "created or received on or after January 1, 1994[.]" Ex. 1, Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 6; Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s SOF") ¶ 2. The Bureau acknowledged receipt of Plaintiff's request on June 6, 2022, and confirmed that the request was being processed, with non-exempt information to be released upon completion of processing. Seidel Decl. ¶ 7; Def.'s SOF ¶ 3. To locate records potentially responsive to Plaintiff's FOIA request, the Bureau queried its Central Records System. Seidel Decl. ¶ 7. Given that Plaintiff's request sought records on himself, the Bureau determined that such records were reasonably expected to be indexed within the Bureau's Central Records System. *Id.* ¶ 14. The Central Records System is an extensive system of records containing applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the Bureau in the course of performing its mission and integrated functions as a law enforcement and intelligence agency, and in fulfilling its administrative and personnel functions. *Id.* ¶ 15. The records maintained in the Central Records System encompass the entire Bureau, including the records of the Bureau's headquarters, its field offices, and its legal attaché offices worldwide. *Id.*

The information in the Central Records System is organized in a numerical sequence of files, or "classifications," according to designated subjects spanning the array of criminal and intelligence functions, and subjects pertaining to counterterrorism, counterintelligence, personnel,

and administrative matters. Seidel Decl. ¶ 16. The Central Records System further indexes information according to individual, organization, or activity or event (e.g., "terrorist attack" or "bank robbery"). *Id.* ¶ 17. The Bureau utilizes a case-management system known as Sentinel, which allows the Bureau to search the Central Record System's indices. *Id.* ¶ 18. The Bureau implemented the Sentinel system in 2018, replacing its prior case management system known as Automated Case Support. *Id.* ¶ 18. The indices located in Automated Case Support were migrated into Sentinel on August 1, 2018. Using Sentinel, the Bureau is able to query the Central Record System and identify records that are potentially responsive to a given FOIA request. *Id.* ¶ 20. Once potentially responsive records are identified, a FOIA analyst reviews each record to determine whether it is in fact responsive to the FOIA request. *Id.*

To identify records potentially responsive to Plaintiff's FOIA request, the Bureau queried both Sentinel and Automated Case Support, given that Plaintiff's request sought records dating back to 1994. Seidel Decl. ¶ 21. The Bureau searched the indices using the terms "John Wilson" and "Wilson, John" with a search cut-off date of June 6, 2022. *Id.* ¶ 22. This search yielded thirty-five pages that were reviewed for responsiveness and redaction. *See id.* ¶ 35.

## II.     <u>Records Release and Withholdings</u>

On April 28, 2023, the Bureau made its final release of records, advising Plaintiff that it reviewed thirty-five pages of records and released twenty-six pages in full or in part, with certain information withheld pursuant to the Privacy Act Exemption (k)(2) and FOIA Exemptions 6, 7(C), and 7(E). Seidel Decl. ¶ 13; Def.'s SOF ¶ 9. The Bureau also informed Plaintiff that consultations with the Department of State and Department of Justice's Office of Inspector General resulted in additional redactions made by those agencies. Seidel Decl. ¶ 13; Def.'s SOF ¶ 10.

Exhibit H of the Seidel Declaration (the *Vaughn* Index) identifies the pages that the Bureau, the Department of State, and the Department of Justice-Office of Inspector General redacted in part or in full, or withheld. *See also* Seidel Decl. ¶¶ 28–29 (describing the justification codes utilized in the *Vaughn* index for redacted or withheld documents). The Bureau withheld all or part of records pursuant to Exemptions 6, 7(C), and 7(E), summarized as follows:

- Exemptions 6 and 7(C) – Clearly Unwarranted Invasion of Privacy/Unwarranted Invasion of Privacy

  - Names and identifying information of a Bureau special agent and professional staff

  - Names of non-Bureau government personnel

  - Names of third parties who were merely mentioned in the record (Exemptions 6 and

- Exemption 7(E) – Investigative Techniques and Procedures

  - Internal Bureau email address

  - Non-public web addresses

  - Non-public Bureau telephone numbers

*See* Seidel Decl., Ex. H (*Vaughn* Index) at A-1.

Exhibit I of the Seidel Declaration contains the Declaration of Susan C. Weetman ("Weetman Decl."), which addresses the Department of State's review of the twenty-six pages referred to it by the Bureau. Weetman Decl. ¶ 4. The Department of State requested that the Bureau redact the names of lower-level State Department employees pursuant to Exemption 6. *See id.* ¶¶ 12–14. These redactions are identified in the *Vaughn* Index.

Exhibit J of the Seidel Declaration contains the Declaration of Deborah M. Waller ("Waller Decl."), which addresses the Department of Justice-Office of Inspector General's review of the records referred to it for consultation. Waller Decl. ¶ 3. That Office requested that the Bureau

redact the name and initials of a lower-level Department of Justice employee pursuant to FOIA Exemptions 6 and 7(C). *See id.* ¶¶ 7–9. These redactions are identified in the *Vaughn* Index

## LEGAL STANDARD

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Accordingly, FOIA "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "The agency bears the burden of establishing that a claimed exemption applies[,]" *Citizens for Resp. & Ethics in Wash. ("CREW")* *v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014), and exemptions are "given a narrow compass[,]" *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

To prevail on summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir.

1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). A court "may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). An agency's justification for withholding records "is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007)); *Pinson v. Dep't of Just.*, Civ. A. No. 12-1872, 2016 WL 29245, at *10 (D.D.C. Jan. 4, 2016). Review is *de novo*, 5 U.S.C. § 552(a)(4)(B), but a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review[,]" *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## ARGUMENT

## I.    <u>The Bureau Conducted an Adequate Search for Potentially Responsive Records.</u>

The Court should grant summary judgment in favor of the Bureau because, as demonstrated by the Seidel Declaration, the agency conducted an adequate search for potentially responsive records. "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Jennings v. Dep't of Just.*, 230 F. App'x 1, 1 (D.C. Cir. 2007) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (cleaned up). The agency must show that it "conduct[ed] a good faith, reasonable search of those systems of records likely to possess the requested records." *Pinson*, 177 F. Supp. 3d at 80 (quoting *Marino*, 993 F. Supp. 2d at 9 (internal citation omitted)). To make this showing, an agency must submit a "reasonably detailed" affidavit setting forth the search terms and the type of search performed. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The burden then "shifts to the FOIA requester to produce countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Dillon v. Dep't of Just.*, 444 F. Supp. 3d 67, 89 (D.D.C. 2020) (internal quotations omitted). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

The Seidel Declaration demonstrates that the Bureau's search was reasonably calculated to uncover all relevant documents. Plaintiff's FOIA request seeks various categories of information pertaining to himself, including his contacts with the Bureau or its employees, Bureau activities involving Plaintiff, and documents the Bureau may have collected or compiled regarding Plaintiff's own activities. *See* Seidel Decl. ¶ 6. The Bureau determined that, in light of the subject of the FOIA request, the records sought were most likely to be indexed in the Bureau's comprehensive Central Records System, which compiles records that include "investigative, intelligence," and "personnel" files created in the course of the Bureau's law enforcement and intelligence missions. *Id.* ¶ 15. As Plaintiff is a United States citizen living in Australia, the Central Records System could reasonably be expected to house records, if any, pertaining to Bureau activities in Australia, given that the Central Records System "spans the entire [Bureau] organization, including "legal attaché offices worldwide." *Id.* Bureau personnel are required by

agency policy to store their federal records in the agency's central recordkeeping system. *Id.* at n.4. Accordingly, the Bureau's decision to search the agency's expansive Central Records System was reasonable, as that is the only location likely to contain responsive documents.

Given that Plaintiff's FOIA request sought records dating back to January 1, 1994, the Bureau queried the Central Records System using both Sentinel indices and Automated Case Support indices, which predated the Sentinel case management system. Seidel Decl. ¶¶ 17–19. The agency applied the search terms "John Wilson" and "Wilson, John," which was reasonably calculated to identify any potentially responsive record whose index entry matched Plaintiff's name. *Id.* ¶ 17. Thus, all records in the Bureau's Central Records System that contained an index entry (e.g., name of person, organization, activity, or event) matching Plaintiff's was reasonably likely to be identified through the Bureau's search methodology.

The Bureau also asserted a *Glomar* response with respect to unacknowledged documents comprising: national security or foreign intelligence records, which are withheld under Exemptions 1 and 3 and 50 U.S.C. § 3024(i)(1); records identifying individuals in the Witness Security Program under Exemption 3 and 18 U.S.C. § 3521; records identifying individuals on a watchlist under Exemption 7(E); and records whose release could reasonably be expected to endanger the life or safety of a confidential human source under Exemptions 7(D), 7(E), and 7(F). *See* Ex. 2, Second Declaration of Michael G. Seidel ("2d Seidel Decl.") ¶¶ 4, 6–33.

The Bureau also properly referred certain documents to the Department of State and Department of Justice-Office of Inspector General for review prior to redaction and release, where the documents originated with or belonged to those government agencies. *See Lea v. Exec. Off. for U.S. Att'ys*, 85 F. Supp. 3d 85, 88 (D.D.C.2015) ("[A]gencies are 'obligated to account for the responsive materials located in their records, even if the decision to release or withhold information

is left to the component where those records originated.'" (quoting *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 67 F. Supp. 3d 290, 296 n. 2 (D.D.C. 2014)); *see also* Weetman Decl. ¶ 4; Waller Decl. ¶ 3.

The Court should therefore find that the Bureau conducted a reasonable and adequate search to locate all potentially responsive documents and enter summary judgment in favor of the Bureau.

## II.   **The Bureau Properly Withheld Material Under FOIA Exemptions 6 and 7(C).**

### A.     **Standards Governing FOIA Exemptions 6 and 7(C).**

FOIA Exemption 6 permits an agency to withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 has been interpreted broadly to protect "bits of personal information, such as names and addresses." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets and internal quotation marks omitted). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. Dep't of Just.*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). Private information must also implicate a "significant privacy interest" to trigger protection. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). This standard, however, "means less than it might seem," as a significant interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. "[S]omething, even a modest privacy interest, outweighs nothing every time" under the balancing test. *Billington v. Dep't of Just.*, 245 F. Supp. 2d 79, 86 (D.D.C. 2003) (quoting *Horner*, 879 F.2d at 879).

When private information in a record implicates a significant privacy interest, under Exemption 6, the Court must determine if disclosing the information would constitute a clearly unwarranted invasion of personal privacy by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Multi Ag Media*, 515 F.3d at 1228. "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Prison Legal News*, 787 F.3d at 1147 (quoting *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996)). "The only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would . . . contribut[e] significantly to public understanding of the operations or activities of the government." *Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 282 (D.C. Cir. 1997) (internal quotations and citations omitted). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[1]

Assessing the applicability of Exemption 7(C), courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *ACLU v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (noting the

---

[1]    FOIA Exemption 7 protects from mandatory disclosure "records or information compiled for law enforcement purposes," to the extent that disclosure could result in one of the six harms enumerated in subparts (A) through (F) of the exemption.  *See* 5 U.S.C. § 552(b)(7).

balance of privacy and public interests when assessing applicability of Exemption 7(C)). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *FLRA*, 510 U.S. at 497) (alterations in original); *Beck v. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *Reps. Comm.*, 489 U.S. at 749). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

While a balancing test is applied to both Exemption 6 and 7(C) withholdings, "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (quoting *ACLU v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011)); *see also Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions."). Specifically, "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because 'Exemption 7(C)' s privacy language is broader than the comparable language in Exemption 6 in two respects.'" *Braga v. FBI*, 910 F.Supp.2d 258, 267 (D.D.C. 2012) (internal citation omitted). First, Exemption 6 "encompasses 'clearly unwarranted' invasions of privacy, while Exemption 7(C) omits the adverb 'clearly.'" *Id.* Second, Exemption 7(C) lowers the risk of harm standard from "would" to "could reasonably be expected to" constitute an invasion. *Id.* The differences in the language between the two Exemptions reflect Congress's decision to provide the government with "greater flexibility in responding to FOIA requests for law enforcement records or information" than in responding to requests for personnel, medical, and other similar files. *See Reps. Comm.,* 489 U.S. at 777 n.22.   Accordingly, if the

documents withheld and information redacted were "compiled for law enforcement purposes," the Court need engage only in an analysis of whether the defendant properly redacted information and withheld documents pursuant to Exemption 7(C). *See People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 541 (D.C. Cir. 2014) (confining its FOIA analysis to Exemption 7(C) because its "privacy language is broader than the comparable language in Exemption 6") (quoting *Reps. Comm.*, 489 U.S. at 756); *Roth v. Dep't of Just.,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)"); *Rodriguez v. Dep't of Army*, 31 F. Supp. 3d 218, 231 (D.D.C. 2014) (same).

### B.    The Bureau Has Satisfied the Threshold Exemption 7 Showing.

Under this analytical framework, the Court should find as a threshold matter that the records at issue here were compiled for law enforcement purposes. *See Abramson*, 456 U.S. at 622; *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). A record is compiled for law enforcement purposes if: (1) the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security; and (2) the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim" of its rationality. *See Keys v. Dep't of Just.*, 830 F. 2d 337, 340 (D.C. Cir. 1987); *Pratt v. Webste*r, 673 F.2d 408, 420–21 (D.C. Cir. 1982); *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 44 (D.D.C. 1999). Courts assume that a "criminal law enforcement agency[s']" records were compiled for law enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'" *Pratt*, 673 F.2d at 418–19. In light of that deference, the D.C. Circuit has opined that a law-enforcement agency need only show that the nexus between the activity in

question and its law-enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421).

"[The Bureau] is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States." Seidel Decl. ¶ 30 (citing 28 U.S.C. §§ 533, 534; Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM); and 28 C.F.R. § 0.85). As part of its law enforcement and intelligence missions, the records at issue here "were compiled in furtherance of the [Bureau's] investigation of Plaintiff's complaint to the Consulate-General of Australia, which was sent to the Department of State," and thereafter forwarded to the Bureau's "Office of Professional Responsibility [] and Investigation Division [] for handling." *Id.* Given these facts, the records at issue were undeniably compiled for law enforcement purposes.

### C.    The Bureau Properly Invoked Exemptions 7(C) and 6 to Support Its Withholdings.

Turning to the material withheld from disclosure, the Bureau, Department of State, and Department of Justice-Office of Inspector General invoked Exemptions 6 and 7(C) to withhold the names and identifying information (i.e., initials, date of birth, social security number, address, financial information, and employee identification number) of Bureau employees assigned to investigate Plaintiff's complaint to the Consulate General of Australia, Seidel Decl. ¶ 35; the names of non-Bureau government personnel who assisted the Bureau's investigation of Plaintiff's complaint to the Consulate-General of Australia, *id.* ¶ 38; and the names of third parties merely mentioned in records responsive to Plaintiff's request, *id.* ¶ 37. In each instance, the Bureau

properly sought to protect these individuals' privacy interests. Seidel Decl. ¶¶ 35–38; *see id.*, Ex. H at 1–3 (*Vaughn* Index); Weetman Decl. ¶¶ 12–14; Waller Decl. ¶ 7.

The names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). This is because revealing the identity of government employees who assist with criminal and national security investigations "could trigger hostility toward a particular employee" motivated by revenge from those targeted by law enforcement activity. *See* Seidel Decl. ¶¶ 36, 38; *Banks v. Dep't of Just.*, 813 F. Supp. 2d 132, 144 (D.D.C. 2011) ("Public identification of [law enforcement personnel] could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives."). Weighing the public interest against these important privacy interests, the Bureau determined that "disclosing the employees' identities . . . would not, themselves, significantly increase the public's understanding of" the Bureau's activities, and thus no statutory purpose is served by revealing these employees' names and identifying information. *Barouch v. Dep't of Just.*, 962 F. Supp. 2d 30, 59-61 (D.D.C. 2013) (United States Marshals Service withholdings of government employees' names, addresses, and other personally identifying information was proper under Exemption (b)(7)(C)).

Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. *Computer Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996). Any third parties who are merely mentioned in investigative records "maintain substantial and legitimate privacy interests in not having [their identities] disclosed," given that being associated with law enforcement activity "carries an extremely negative connotation" that may expose them "to possible harassment or criticism and focus derogatory inferences and suspicion on them." Seidel

Decl.¶ 37. The Bureau determined that there was no public interest in the disclosure of these third parties' identities that outweighed their legitimate privacy interests. *Id.*; *see Schrecker v. Dep't of Just.,* 349 F.3d 657, 661 (D.C. Cir. 2003) (Bureau may withhold names of third parties "unless disclosure is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity"); *Mezerhane de Schnapp v. U.S. Citizenship & Immigr. Servs.*, 67 F. Supp. 3d 95, 104 (D.D.C. 2014) ("[d]isclosure of the names of [third-party] individuals would not . . . [provide] any answers about possible agency misconduct, and would infringe upon the privacy interests of third parties not before the Court"). The Court should therefore grant summary judgment in the Bureau's favor with respect to material withheld under Exemption 7(C). Furthermore, because the records withheld pursuant to Exemption 7(C) were also withheld under Exemption 6, the Court should also uphold the agency's redactions under Exemption 6.

### III.   The Court Should Uphold the Bureau's Withholdings Relying on Exemption 7(E).

Exemption 7(E) allows an agency to withhold information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). It affords "categorical protection," *Jud. Watch, Inc. v. FBI*, 2001 WL 35612541, at *8 (D.D.C. Apr. 20, 2001) (internal quotation marks omitted), to material that "would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public," *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997). The bar is "relatively low . . . for the agency to justify withholding" information under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Here, the Bureau withheld from disclosure its internal email addresses, non-public intranet web addresses, and non-public telephone numbers. *See* Seidel Decl. at 14 (summary chart); *id.*, Ex. H at 1-3 (Exemption 7(E)) applied at Bates 1, 2, 10–11, and 34. This information could be used by bad actors to perpetrate data breaches and other hacking attempts on the Bureau's information technology systems, gain unauthorized access to those systems, view sensitive investigative information, interfere with the Bureau's non-public intranet system, or disrupt the Bureau's internal communications. Seidel Decl. ¶ 42. Such a breach of the Bureau's internal information technology and communications systems could reasonably be expected to enable criminals to circumvent the law and harm the Bureau's ability to pursue its law enforcement mission. *Id.* The Bureau's invocation of Exemption 7(E) to protect this non-public information is, therefore, appropriate and should be upheld.

## IV.    The Bureau Has Produced All Reasonably Segregable, Non-Exempt Material.

If a record contains information exempt from disclosure, FOIA requires any "reasonably segregable," non-exempt information to be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007).

Here, the Bureau conducted an extensive review of thirty-five pages of potentially responsive information, and after that review, released seven pages in full and nineteen pages with

redactions, and withheld 9 pages in full (8 of which were duplicates of pages accounted for elsewhere in the Bureau's production), as detailed in the *Vaughn* Index. *See* Seidel Decl. ¶ 46; *id.* Ex. H at 1–3.  With respect to the 19 redacted pages, the Bureau determined that these pages "comprise a mixture of material that could be segregated for release and material [whose] release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages." Seidel Decl. ¶ 46(B). As for the single non-duplicate page withheld in full, the Bureau determined that the non-exempt material on that page is "so intertwined with exempt material" that any attempt at segregation would "produce disjointed words, phrases, or sentences that taken separately or together, would have minimal or no informational content." *Id.* ¶ 46(C). The Weetman and Waller Declarations also describe the limited information that was redacted from documents referred by the Bureau to the Department of State and the Department of Justice-Office of Inspector General. *See* Weetman Decl. ¶ 4, 7 (name of a working-level State Department employee withheld); Waller Decl. ¶ 7 (name of lower-level Office of Inspector General employee withheld).

The supporting declarations demonstrate that the Bureau has fulfilled its obligation to segregate exempt from non-exempt material and release as much exempt material as possible to Plaintiff. The Court should, therefore, grant summary judgment in the Bureau's favor on its segregability obligations.

## V.    **The Bureau Has Properly Asserted a *Glomar* Response.**

In lieu of searching for and withholding exempt records, "an agency may issue a *Glomar* response, i.e., refuse to confirm or deny the existence or nonexistence of responsive records if the particular FOIA exemption at issue would itself preclude the acknowledgement of such documents." *Elec. Priv. Info. Ctr. ("EPIC") v. NSA*, 678 F.3d 926, 931 (D.C. Cir.

2012). "Because *Glomar* responses are an exception to the general rule that agencies must acknowledge the existence of information responsive to a FOIA request and provide specific, non-conclusory justifications for withholding that information, they are permitted only when confirming or denying the existence of records would itself 'cause harm cognizable under an FOIA exception.'" *Roth v. Dep't of Just.*, 642 F.3d 1161, 1178 (D.C. Cir.2011) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (emphasis added). "In determining whether the existence of agency records vel non fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Wolf*, 473 F.3d at 374 (emphasis added). "An agency waives any right to make a *Glomar* response by disclosing whether responsive records exist." *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 815 (D.C. Cir. 2021).

Here, the Bureau issued a *Glomar* response applicable to unacknowledged records in four categories: (a) national security or foreign intelligence records, which are withheld under Exemptions 1 and 3 and 50 U.S.C. § 3024(i)(1); (b) records identifying individuals in the Witness Security Program under Exemption 3 and 18 U.S.C. § 3521; (c) records identifying individuals on a watchlist under Exemption 7(E); and (d) records whose release could reasonably be expected to endanger the life or safety of a confidential human source under Exemptions 7(D), 7(E), and 7(F). 2d Seidel Decl. ¶¶ 7–33. As discussed below, with respect to each category of unacknowledged records, the Bureau's *Glomar* response is appropriate and should be upheld by the Court.

### A.  National Security or Intelligence Records

"[W]hen a *Glomar* response touches upon issues of national security—'a uniquely executive purview'—courts must give agency decisions substantial deference." *Competitive Enter. Inst. v. NSA*, 78 F. Supp. 3d 45, 53 (D.D.C. 2015) (quoting *EPIC*, 678 F.3d at 931). Courts in this District "consistently defer[ ] to executive affidavits predicting harm to national security, and have

found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. Dep't of Just.,* 331 F.3d 918, 927 (D.C. Cir. 2003). If the agency's *Glomar* response appears "logical" and "plausible," the Court should sustain the agency's *Glomar* assertion. *ACLU v. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011).

FOIA Exemption 1 permits agencies to withhold information specifically protected from disclosure by an executive order in the interest of national security. 5 U.S.C. § 552(b)(1); *see Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009). Exemption 3 provides for the non-disclosure of information specifically protected from disclosure by statute, either because the statute provides no discretion regarding disclosure of the information, or because the statute sets specific criteria that are shown to be satisfied by the information at issue. 5 U.S.C. § 552(b)(3); *Reporters Comm. for Freedom of the Press v. Dep't of Just.*, 816 F.2d 730, 734 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989).

Relying on Exemptions 1, 3, and the National Security Act, 50 U.S.C. § 3024(i)(1), the Bureau issued a *Glomar* response covering records that—if their existence or non-existence was acknowledged—could harm United States national security or the Bureau's efforts to gather foreign intelligence. 2d Seidel Decl. ¶ 8. While the Bureau does not acknowledge the existence or non-existence of such records, this category of records may include "national security investigative files pertaining to . . . terrorism or counterintelligence," records of "surveillance targeting acknowledged subjects of national security interest," "non-public documents pertaining to national security related intelligence programs or events," and "intelligence community (IC) assessments concerning threats to the national security of the United States." *Id.* The disclosure of the existence or non-existence of national security or intelligence information "would provide adversaries with

valuable insight into the [Bureau's investigative efforts," "permit hostile governments to appraise the scope, focus, location[,] and capabilities of the [Bureau's] intelligence-gathering methods and activities," "allow hostile agents to devise countermeasures to circumvent" the Bureau's methods and activities, and allow hostile actors to "assess[] the ability of [the Bureau] to obtain information on a specific target during a specific period of time," thus damaging the Bureau's national security and intelligence mission. *Id.* ¶ 19.

To the extent Plaintiff's FOIA request includes such records, the Bureau's *Glomar* response finds unequivocal support in FOIA Exemptions 1, 3, and the National Security Act, 50 U.S.C. § 3024(i)(1). *See, e.g.*, *Schaerr v. Dep't of Just.*, 435 F. Supp. 3d 99, 113 (D.D.C. 2020) (accepting agency components' *Glomar* responses relying on Exemptions 1 and 3). The Bureau is bound to comply with Executive Order 13526, which exempts from public disclosure classified records of intelligence activities, sources, and methods. *See* 2d Seidel Decl. ¶¶ 11–16. Further, the National Security Act mandates the protection of intelligence sources and methods, whether such information is classified; such information is therefore properly withheld pursuant to the non-discretionary prong of Exemption 3. *See* 50 U.S.C. § 3024(i)(1); 2d Seidel Decl. ¶¶ 17–19. Accordingly, as explained in the Second Seidel Declaration, the Bureau has appropriately asserted a *Glomar* response over unacknowledged records pertaining to national security and intelligence.

**B. Records that Would Identify Individuals in the Witness Security Program**

The Bureau also asserted a *Glomar* response over unacknowledged records that could identify individuals in the Witness Security Program, relying on FOIA Exemption 3 and 18 U.S.C. § 3521(b)(1)(G). 2d Seidel Decl. ¶¶ 20–22. That statutory provision, and regulations promulgated thereunder, prohibit the Bureau from disclosing "any information concerning the Witness Security Program or its participants." *Id.* ¶ 20 (citing 18 U.S.C. § 3521(b)(1)(G), 28 C.F.R. 0.111(b)(B),

and Attorney General Order No. 2511-2001). "To publicly address the existence of Witness Protection Program information in the context of a particular request would indicate the presence of [such] information in responsive records, thus revealing information that is statutorily prohibited from being disclosed." *Id.* ¶ 21.

The Bureau therefore asserts this standard *Glomar* response whenever a FOIA requester seeks information about an individual, in order for its assertions to remain credible and effective, *id.*, and to further the government's interest in protecting information that would identify confidential witnesses, *see CIA v. Sims*, 471 U.S. 159, 172 (1985); *Barnes v. FBI*, 35 F.4th 828, 830–31 (D.C. Cir. 2022). The Court should therefore leave undisturbed the Bureau's *Glomar* response with respect to unacknowledged documents that could reveal individuals in the Witness Security Program.

### C.  Records that Would Identify Individuals on a Watchlist

The Bureau consistently "neither confirms nor denies the existence of watchlist records" in response to a FOIA request for records pertaining to an individual, as is the case in this matter. *See* 2d Seidel Decl. ¶ 23. "The [Bureau's] records concerning terrorist watchlists were compiled and created in furtherance of the FBI's law enforcement and national security functions." *Id.* ¶ 24. The information compiled in such lists "is used to enable the [Bureau]" to perform its core law enforcement and national security-related duties." *Id.* Therefore, watchlist records meet FOIA Exemption 7's threshold requirements. *See Rhodes v. FBI*, 316 F. Supp. 3d 173, 177 (D.D.C. 2018) (finding that the threshold law enforcement of Exemption 7 was "without question satisfied" with respect to the Bureau's records concerning watchlists).

Moreover, revealing the existence or non-existence of individuals on terrorist watchlists "would disclose the techniques and procedures for law enforcement investigations" and "risk

circumvention of the law." 5 U.S.C. § 552(b)(7)(E). For example, an individual who "knows who is or is not on a watchlist" can deduce the behavior that may land a person on such a list. 2d Seidel Decl. ¶ 25. "This knowledge would allow criminals to develop countermeasures to conceal their activities and thwart [the Bureau's] efforts to combat crime and protect" national security. *Id.* Revealing that a person is on a watchlist "would induce the individual to flee, hide[,] or destroy evidence"; on the other hand, disclosing that a person is not on a watchlist "could embolden a criminal to continue [their] activities and encourage other criminals" to follow suit. *Id.* Either outcome would diminish the Bureau's ability to effectively deploy watchlists to meet its law enforcement and national security mandate. *See id.*

Because the disclosure of the existence or non-existence of watchlists records would harm an interest protected under FOIA Exemption 7(E), the Court should enter summary judgment in favor of Defendant in connection with its assertion of *Glomar* over records that would identify individuals on a watchlist.

### D. Records that Could Endanger the Life or Physical Safety of Confidential Sources

The Bureau consistently relies on Exemptions 7(D), 7(E), and 7(F) in neither confirming nor denying the existence of records concerning confidential sources or the Bureau's confidential human source program. 2d Seidel Decl. ¶ 27. Exemption 7(D) "protects . . . information that could reasonably be expected to disclose the identity of a confidential source." *Shem-Tov v. Dep't of Just.*, 531 F. Supp. 3d 102, 107 (D.D.C. 2021); 5 U.S.C. § 552(b)(7)(D). As discussed above, Exemption 7(E) exempts from disclosures law enforcement techniques and procedures. *See supra* at 16. Finally, Exemption 7(F) protects records or information compiled for law enforcement purposes "the production of [which] . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F); *see Elec. Priv. Info. Ctr. v. Dep't of*

*Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (FOIA does not require an agency "to identify the specific individuals at risk from disclosure," thus by its own express terms, Exemption 7(F) is to be construed broadly).

As the Second Seidel Declaration explains, disclosure of the existence or non-existence of confidential source information implicates the interests protected by Exemptions 7(D), 7(E), and 7(F). Taken in order: first, disclosure of the existence or non-existence of confidential source information in response to a particular FOIA request "would create a pattern" of information from which "criminals could easily discern who is and is not a [Bureau confidential source]." *Id*. ¶ 29. Second, revealing the existence or non-existence of records about confidential sources "could reveal non-public investigative strategies and the scope of intelligence available to the [Bureau]," and could allow bad actors to identify confidential sources, thus limiting the Bureau's ability to rely on this law enforcement technique while exposing confidential sources to potential reprisal. *Id.* ¶ 31. And third, the agency's "[e]xperience has shown that when identifying information concerning a [confidential source] becomes known, that disclosure places the [confidential source] in a particularly vulnerable position and subjects the [confidential source] to violent retaliation through physical harm or even death." *Id.* ¶ 33.

For these reasons, the Court should uphold the Bureau's reliance on Exemptions 7(D), 7(E), and 7(F) in issuing a standard *Glomar* response pertaining to records that could endanger the life or physical safety of confidential sources.

## CONCLUSION

For the reasons discussed above, the Bureau respectfully requests that the Court grant summary judgment in Defendant's favor. A proposed order is submitted with this Motion.

Dated: February 22, 2024                          Respectfully submitted,
       Washington, DC

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____ */s/ Tabitha Bartholomew* _____
        TABITHA BARTHOLOMEW
        D.C. Bar No. 1044448
        Assistant United States Attorney
        601 D Street, NW
        Washington, DC 20530
        Tel: 202-252-2529
        Tabitha.Bartholomew@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN CHRISTIAN WILSON,

        Plaintiff,

        v.                          Civ. A. No. 22-3062 (ABJ)

FEDERAL BUREAU OF INVESTIGATION,

        Defendant.

**<u>PROPOSED ORDER</u>**

    UPON CONSIDERATION of Defendant's motion for summary judgment, the parties' briefs, and the entire record herein, it is hereby

    ORDERED that Defendant's Motion is GRANTED; and it is further

    ORDERED that summary judgment is entered in favor of Defendant.


SO ORDERED.


Dated: _____                 _____

                                            AMY BERMAN JACKSON
                                            United States District Judge