UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN CHRISTIAN WILSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-3062 (ABJ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff John Christian Wilson, a dual citizen of the United States and Australia, has sued defendant Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, challenging the agency's release of documents in response to his FOIA request for records related to himself. Plaintiff disputes the thoroughness of defendant's search and its refusal to confirm or deny the existence of certain categories of records.

The parties have filed cross-motions for summary judgment, and the Court will grant summary judgement in favor of FBI and deny plaintiff's motion. The Court finds that the agency's search was sufficient, and that the agency's invocation of FOIA exemptions was proper. At bottom, the Court agrees that certain programs of the agency are sufficiently sensitive and protected by statute that even revealing the existence of records concerning plaintiff in those programs would disclose law enforcement techniques, risk harm to sources, and violate statutes protecting those programs.

1

## BACKGROUND

On May 20, 2022, plaintiff submitted a FOIA request to the FBI seeking records that "mention the following terms:" "John Christian Wilson," "John C. Wilson," and "John Wilson." FOIA Request of John Christian Wilson, Ex. 1 to Compl. [Dkt. # 1-5] ("FOIA Request") at 1; Def.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 15-1] ("Def.'s SOF") ¶ 2; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts and Additional Material Facts [Dkt. # 17-4] ("Pl.'s Resp. SOF") ¶ 2. After acknowledging receipt of the request, defendant informed plaintiff that all responsive records were previously released to him under a separate FOIA request. Def.'s SOF ¶ 4; Pl.'s Resp. SOF ¶ 4; *see generally* FBI Response to FOIA Request, Ex. 3 to Compl. [Dkt. # 1-7] at 2. On September 1, 2022, plaintiff appealed the FBI's response to the Department of Justice's Office of Information Policy ("OIP"), *see* Def.'s SOF ¶¶ 5–6; Pl.'s Resp. SOF ¶¶ 5–6; *see also* OIP Appeal of FOIA Request, Ex. 4 to Compl. [Dkt. # 1-8], but his appeal was closed upon commencement of this civil action on October 8, 2022. Def.'s SOF ¶¶ 7–8; Pl.'s Resp. SOF ¶¶ 7–8.

Defendant filed its answer to the complaint on December 27, 2022, *see* Answer [Dkt. # 7], followed by a status report on February 2, 2023 indicating that it would release all responsive records by May 1, 2023. Def.'s Status Report [Dkt. # 9] at 1. Defendant thereafter made a "final release" of responsive documents on April 28, 2023. Def.'s SOF ¶ 9; Pl.'s Resp. SOF ¶ 9; *see also* FBI Final Response to FOIA Request, Ex. G to Decl. of Michael G. Seidel [Dkt. # 15-3] ("Final Response") at 242.

As part of the final release, defendant refused to confirm or deny the existence of certain records, asserting that even stating whether the records exist is itself covered by a FOIA exemption.

This is commonly known as a "*Glomar* response," and defendant issued four of them.[1]  First, defendant asserted that it could neither confirm nor deny the existence of responsive intelligence records pursuant to FOIA Exemptions 1 and 3, stating that the disclosure of this information would reveal the existence of records in contravention of both an executive order and the National Security Act.  Final Response at 3.  Second, defendant asserted that it could neither confirm nor deny the existence of responsive records pursuant to FOIA Exemption 7(E) because disclosure would reveal law enforcement techniques and procedures and risk circumvention of law enforcement efforts.  *Id*.  Third, defendant asserted that it could neither confirm nor deny the existence of responsive Witness Security Program records pursuant to FOIA Exemption 3, since the disclosure of this information would reveal information protected by statute.  *Id*.  Fourth, defendant asserted that it could neither confirm nor deny the existence of responsive confidential informant records pursuant to FOIA Exemption 7(D), 7(E), and 7(F), since the disclosure of this information would reveal confidential sources; law enforcement techniques and procedures that would risk circumvention of law enforcement efforts; and endanger the life or physical safety of an individual.  *Id.*

After reviewing the released records and defendant's response, plaintiff disputed the adequacy of defendant's search and use of the *Glomar* responses.  Joint Status Report [Dkt. # 11] at 1.  On February 22, 2024, defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and supported its motion with a declaration explaining the search techniques

---

1   "The name [*Glomar*] is derived from the facts of *Phillippi v. CIA*, in which this court addressed the CIA's refusal to confirm or deny whether it had documents relating to Howard Hughes' ship, the Glomar Explorer, which had reputedly been used in an attempt to recover a lost Soviet submarine."  *American Civil Liberties Union v. C.I.A.*, 710 F.3d 422, 425 n.1 (D.C. Cir. 2013), *citing Phillippi v. Central Intelligence Agency,* 546 F.2d 1009 (D.C. Cir. 1976).

defendant used and justifying the *Glomar* responses. *See* Def.'s Mot. for Summ. J. & Mem. in Supp. [Dkt # 15], Decl. of Michael G. Seidel [Dkt. # 15-2] ("Seidel Decl."). Plaintiff opposes the motion and has filed a cross-motion of his own, *see* Pl.'s Mem. in Opp. to Def.'s Mot. [Dkt. # 16-5] ("Pl.'s Opp."); Pl.'s Cross. Mot. for Summ. J. [Dkt. # 17] ("Pl's Cross Mot."), and the matter is fully briefed. Reply in Supp. of Def.'s Mot. & Opp. to Pl.'s Cross-Mot. [Dkt. # 19] ("Def.'s Reply"), Pl.'s Reply to Def.'s Opp. to Cross-Mot. [Dkt. # 21] ("Pl.'s Cross-Reply").

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable factfinder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), citing

*Founding Church of Scientology v. Nat'l Sec. Admin.*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).

## ANALYSIS

### I. Defendant's Search for Responsive Records Was Adequate.

"Agencies have the discretion to construe requests reasonably and conduct flexible and targeted searches within their internal records systems." *Kowal v. U.S. Dep't of Justice*, 107 F.4th 1018, 1028 (D.C. Cir. 2024), citing *Nat'l Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891–92. The D.C. Circuit has explained that in order to obtain summary judgment, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To this end, an agency may submit "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020), quoting *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017).

"The court applies a reasonableness test to determine the adequacy of search methodology . . . consistent with the congressional intent tilting in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982); *see Kowal*, 107 F.4th at 1027 (since "a reasonable and thorough search may still miss records," the focus is on the process, not the results, when

determining the adequacy of a FOIA search"). Thus, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

Defendant's declarant, Michael G. Seidel, is employed as the Section Chief of the Record/Information Dissemination Section, Information Management Division at the FBI and he describes the search defendant conducted in detail. *See* Seidel Decl. ¶¶ 1, 14–23. According to Seidel, FBI maintains records in the Central Records System ("CRS"), an "extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files." *Id.* ¶ 15. To organize data in CRS, an index is kept with entries for those who are the focus of investigations (main index entries) and for those who are associated with an investigation but not its main subject (reference index entries). *Id.* ¶ 17. The index is searchable through a case management program known as "Sentinel." *Id.* ¶ 18. Sentinel is used by FBI personnel to locate documents for functions such as: "conducting criminal, counterterrorism, and national security investigations; conducting background investigations; performing citizenship and employment queries; and administering security screenings, to include presidential protection." *Id.* ¶ 19.

In response to plaintiff's FOIA request, the FBI searched the Sentinel indices (as well as indices contained in Automated Case Management, the system that Sentinel replaced), for "John Wilson" and "Wilson, John." *Id.* ¶ 22. Its search yielded two main index entries and two reference index entries. *Id*. After further processing, one of the main files was determined to relate to plaintiff's previous FOIA request and the other was deemed non-responsive to the instant FOIA request. *Id*. Of the two reference files, one was previously released to plaintiff under his previous

FOIA request. *Id.* The second reference file was released to plaintiff under the instant FOIA request. *Id.*

Plaintiff asserts that defendant's search was inadequate because defendant failed to use "all of the search terms in the [FOIA] request." Pl.'s Opp. at 14. Specifically, plaintiff requested that the FBI employ the search terms "John Christian Wilson," "John C. Wilson," and "John Wilson," *id.* at 15, but the FBI only searched for "John Wilson" and "Wilson, John." Seidel Decl. ¶ 22. He relies on a declaration from a former FBI employee, Jennifer Coffindaffer, to support his claim. *See* Decl. of Jennifer L. Coffindaffer [Dkt. # 16-3] ("Coffindaffer Decl.").[2] Coffindaffer states: "In my professional opinion, FBI did not undertake an adequate search for records when they did not search Sentinel for 'John Christian Wilson' and 'John C. Wilson.'" *Id.* ¶ 13.

Plaintiff's argument is not persuasive. Plaintiff's declarant does not explain why it is necessary to include narrower requests within the broad search for plaintiff's first and last name, particularly given Sentinel's ability to search for variations on a name. To the contrary, in his third declaration, Seidel makes clear that when a first and last name are used to search Sentinel, all possible middle names are searched as well. Third Seidel Declaration ¶ 6, Ex. A to Def.'s Reply [Dkt. # 19] ("Third Seidel Decl.") ("[T]he FBI's standard search approach excludes middle initial searching, as middle initials and middle names are automatically returned in first and last name searching."). Thus, while it is true that agencies must search for "'synonyms' and 'logical variations' of the words used in [a FOIA] request," *Jud. Watch, Inc. v. U.S. Dep't of Justice*, 373

---

2   Plaintiff filed the Coffindaffer Declaration prior to the filing of the Third Seidel Declaration. *See* Coffindaffer Decl.; Third Seidel Decl. However, plaintiff marshals no facts to contradict the Third Seidel Deceleration in any of his filings made after the Third Seidel Declaration was filed. *See* Pl.'s Cross-Reply.

F. Supp. 3d 120, 125 (D.D.C. 2019), quoting *Citizens For Resp. and Ethics in Washington v. United States Gen. Services Admin.*, No. 18-cv-377, 2018 WL 6605862, at *5 (D.D.C. Dec. 17, 2018) (citations omitted), FBI did exactly that by using Sentinel's expansive search features, which include logical variations of names that would have included plaintiff's requested terms. Third Seidel Decl. ¶ 6.

Plaintiff also asserts that defendant's search was inadequate because, in addition to CRS, responsive records may reside in the FBI's Electronic Surveillance database ("ELSUR") and the FBI's DELTA database (used for Confidential Human Source management). Pl.'s Opp. at 16, 17. He relies once more on a declaration from Coffindaffer, who maintains that "[t]here are records maintained in the ELSUR files that are not maintained in CRS." *Id.* at 16. Again, plaintiff's argument is not persuasive. The Third Seidel Declaration makes clear that searches in the Sentinel system also query indices residing in ELSUR, Third Seidel Decl. ¶ 7, meaning that the fact that ELSUR was not searched directly is immaterial; the Sentinel search would also have yielded responsive records present in ELSUR. *Id.* Conversely, Coffindaffer fails to explain her contention in any meaningful manner, nor does she address the ability of Sentinel to search both CRS and ELSUR simultaneously. *Id.* Conclusory assertions such as these cannot create a "genuine dispute" of fact, Fed. R. Civ. P. 56(a), particularly in light of the "good faith" presumption afforded to agency declarations. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Finally, with respect to the DELTA, defendant's declarant avers that, notwithstanding its initial decision not to search the database, it later conducted a search of DELTA "for variations of Plaintiff's name, his date of birth, and his email address and located no responsive records" in response to separate litigation in the Southern District of New York. *See* Third Seidel Decl. ¶ 9; *see also Wilson v. Fed. Bureau of Investigation*, No. 20-cv-10324, 2022 WL 2532176, at *5

(S.D.N.Y. Feb. 16, 2022). The dispute is therefore moot, and defendant has asserted a *Glomar* response with respect to those potential records as well.

For these reasons, the Court finds that FBI has met its burden to establish that its search for records was adequate.

## II.     Defendant Properly Withheld Records Pursuant to FOIA Exemptions 6 and 7.

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute provides that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records all within one of nine narrowly construed exemptions. *See* 5 U.S.C. § 552(b); *FBI v. Abramson*, 456 U.S. 615, 617 n.1 (1982). This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). When an agency withholds documents or parts of documents, it must explain what it is withholding and the statutory exemptions that apply. *See Vaughn v. Rosen,* 484 F.2d 820, 825–28 (D.C. Cir. 1973).

In its release, defendant withheld material under FOIA Exemptions 6, 7(C), and 7(E). *See* Def.'s Mot. at 10–17. FOIA Exemption 6 enables the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure

9

information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations of prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Defendant's declarant avers that the agency "is the primary investigative agency of the federal government" and that the responsive records withheld under Exemptions 6 and 7(C) "were compiled in furtherance of [defendant's] investigation of Plaintiff's complaint to the Consulate-General of Australia," in which he alleged misconduct by FBI employees. Seidel Decl. ¶ 30. The records were therefore compiled by the FBI in furtherance of its federal law enforcement mission and qualify as law enforcement records for the purposes of Exemption 7(C). *See Tracy v. U.S. Dep't of Justice*, 191 F. Supp. 3d 83, 94 (D.D.C. 2016). In addition, because Exemption 7(C) protects a wider swath of information from disclosure than Exemption 6, courts need only analyze whether information was properly withheld under Exemption 7(C) when a defendant properly invokes both Exemptions 6 and 7(C). *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755, 763–65 (1989) (comparing Exemption 7(C) and Exemption 6); *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)"); *compare with Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C. Cir. 2004) (deeming "the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same"). Therefore, the Court will address only Exemption 7(C).

In determining whether Exemption 7(C) applies to particular information, the Court must balance an individual's interest in protecting against "unwarranted" invasions of privacy against the public interest in disclosure. *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011), quoting *U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989). The privacy interest at stake belongs to the individual whose name or information is in a responsive record, not the government agency. *See Reporters Comm.*, 489 U.S. at 763–65. In addition, the privacy interest belongs broadly to "the targets of law-enforcement investigations, . . . witnesses, informants, and . . . investigating agents." *Roth*, 642 F.3d at 1174, citing *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003) (internal quotations omitted).

Defendant invokes Exemption 7(C) to justify withholding the names and identifying information of its employees, other government personnel who assisted defendant in its investigation, and third parties in records responsive to plaintiff's request. Seidel Decl. ¶ 35, 37, 38. Plaintiff does not challenge defendant's invocation of the Exemption with respect to this material. *See* Pl.'s Opp. at 20. Absent an identifiable public interest, the asserted "privacy interest . . . prevails because 'something, even a modest privacy interest, outweighs nothing every time.'" *Kowal*, 107 F.4th at 1031, quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

With respect to the Exemption 7(E) documents, defendant withheld an internal email address, non-public intranet addresses, and non-public phone numbers. *See* Seidel Decl. at 14 (summary chart). According to defendant's expert, such information could be used to breach defendant's information technology systems and gain unauthorized access. *Id.* ¶ 42. "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, Exemption 7(E) only requires that

11

the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI,* 646 F.3d 37, 42 (D.C.Cir.2011), quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotation marks omitted). Once more, plaintiff does not challenge defendant's withholding of this information, Pl.'s Opp. at 20, and courts have repeatedly "recognized the risk of a cyber-attack . . . as valid grounds for withholding under Exemption 7(E)." *Prechtel v. Fed. Commc'ns Comm'n*, 330 F. Supp. 3d 320, 335 (D.D.C. 2018), citing *Long v. ICE*, 149 F.Supp.3d 39, 51 (D.D.C. 2015).

For these reasons, the Court finds that defendant properly withheld records pursuant to Exemptions 7(C), and 7(E).

### III.     Defendant Has Properly Asserted *Glomar* Responses.

In some instances, the government may refuse to even confirm or deny the existence of responsive records in what is called a "*Glomar* response." *Wolf v. CIA.*, 473 F.3d 370, 374 (D.C. Cir. 2007). Such a response is appropriate when revealing the very fact that an agency possesses responsive records would itself "cause harm cognizable under [a] FOIA exception." *Id.*, quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982). To justify a *Glomar* response, the agency must supply the court with a detailed affidavit that explains why it cannot provide a substantive response pursuant to a FOIA exemption. *Elec. Privacy Info. Ctr. v. Nat. Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012). And to determine whether a *Glomar* response "fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Wolf*, 473 F.3d at 374.

#### A.     Defendant's *Glomar* Response to Records Pertaining to National Security and Intelligence Was Proper.

Defendant asserts a *Glomar* response for "records that—if their existence or non-existence was acknowledged—could harm United States national security or the Bureau's efforts to gather

foreign intelligence," relying on FOIA Exemptions 1 and 3. Def.'s Mot. at 20. Exemption 1 protects records that are kept secret under "criteria established by an Executive order," 5 U.S.C. § 552(b)(1)(A), and defendant points to Executive Order 13,526 ("E.O. 13,526") in support of its *Glomar* response. *Id.* at 21. E.O. 13,526 governs document classification, and allows for information for to be classified if:

> (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of [E.O. 13,526]; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 13,526 § 1.1(a) 75 Fed. Reg. 707 (Dec. 29, 2009). E.O. 13,526 also provides that "[a]n agency may refuse to confirm or deny the existence or non-existence of requested records whenever the fact of their existence or non-existence is itself classified under this order or its predecessors." *Id.* § 3.6(a). Taken together, these provisions make clear that the mere existence or non-existence of certain records is protected under E.O. 13,526, and thus that the existence or non-existence of those records is information kept secret under "criteria established by an Executive order," as Exemption 1 requires. 5 U.S.C. § 552(b)(1)(A).

Exemption 3 protects records "specifically exempted from disclosure by statute . . . if that statute . . . (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Defendant argues that the National Security Act, 50 U.S.C. § 3024(i)(1), supports its Exemption 3 *Glomar* response. Def.'s Mot. at 20. Under the National Security Act, the Director of National Intelligence ("DNI") is

obligated to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). To fulfill that duty, the DNI has promulgated Intelligence Community Directive 700, which provides that the FBI, among other agencies, will protect "national intelligence and intelligence sources, methods and activities from unauthorized disclosures." Intelligence Community Directive 700, § E.2.a (June 7, 2012). According to defendant, the disclosure of the existence or non-existence of certain records would result in defendant's failing to protect national intelligence, and "such information is therefore properly withheld pursuant to the nondiscretionary prong of Exemption 3." Def.'s Mot. at 21. For example, the existence or non-existence of records would "permit hostile governments to appraise the scope, focus, location and capabilities of the FBI's intelligence-gathering methods and activities." Second Decl. of Michael G. Seidel [Dkt. # 15-4] ("Second Seidel Decl.") ¶ 19.

Plaintiff argues that defendant's *Glomar* response regarding national security records is insufficient because "there are no national security issues presented" in plaintiff's FOIA request. Pl.'s Opp. at 24, quoting Coffindaffer Decl. ¶ 18. He points out that the events described in his FOIA requests are over twenty years old, so it is unlikely there are ongoing law enforcement activities related to the documents he requested, and the statute of limitations has run out on any crimes that could be currently under investigation. *Id.* at 24.

These facts do not support a conclusion that there are no national security issues presented in his FOIA request. Plaintiff's declarant offers no supporting justification for her contention that law enforcement's interest in plaintiff was limited to a period of twenty to thirty years ago, and plaintiff's FOIA request was not limited to activities occurring at that time. *See* FOIA Request at 1. Moreover, even if there are no records concerning plaintiff other than those from twenty to thirty years ago, the Second Seidel Deceleration sets forth the rationale for shielding records

related to national security investigations that are no longer active. For one, "[o]nce an intelligence activity or method (or the fact of its use or non-use in a certain situation) is discovered, its continued successful use is seriously jeopardized." Second Seidel Decl. ¶ 13. In addition, for intelligence sources, "disclosure can result in threats to the source's life and safety, as well as that of the source's family and others close to the source." *Id.* These potential harms remain, notwithstanding the statute of limitations for any criminal wrongdoing.

For these reasons, the Court finds that defendant's invocation of a *Glomar* response with respect to national security and intelligence records was proper.

### B. Defendant's *Glomar* Response to Records Identifying Individuals in the Witness Security Program Was Proper.

Defendant also issued an Exemption 3 *Glomar* response regarding records that would identify individuals in the Witness Security Program. Def.'s Mot. at 21. Defendant relies on 18 U.S.C. § 3521(b)(1)(G), which prohibits the disclosure of "any information concerning the Witness Security Program or its participants." Defendant argues that a *Glomar* response is proper because "[t]o publicly [identify] the existence of witness protection in the context of a particular request would indicate the presence of Witness [Security] Program information in responsive records," which is, in and of itself, information concerning the Witness Security Program. Second Seidel Decl. ¶ 21. As a result, according to defendant, the release of such information is protected by Exemption 3.

Plaintiff's declarant disputes this, arguing that "the records requested. . . have no nexus to the Witness Security Program." Coffindaffer Decl. ¶ 18. But once more, she provides no factual support for this statement; such "conclusory" and "self-serving" averments are "woefully inadequate to create a genuine dispute of fact." *Freedom Watch, Inc. v. Nat'l Sec. Agency*, 197 F. Supp. 3d 165, 176 (D.D.C. 2016). Further, defendant's declarant explains that the FBI

"consistently neither confirms nor denies the existence of Witness Security Program records, because to be credible and effective, the FBI must use this *Glomar* response in all such cases regardless of whether responsive records actually exist or not." Second Seidel Decl. ¶ 21. To do otherwise would create a pattern of *Glomar* responses and non-responses that provide information on defendant's human sources, in violation of 18 U.S.C. § 3521(b)(1)(G). *See Kalu v. Internal Revenue Serv.*, 159 F. Supp. 3d 16, 23 (D.D.C. 2016) (holding that "[a]nything other than a 'neither confirm nor deny' response" in response to FOIA requests can provide information to a requestor). The Court agrees and finds that, to the extent plaintiff's request touches upon the Witness Security Program, defendant's *Glomar* response was proper.

### C. Defendant's *Glomar* Response to Records Identifying Individuals on a Watchlist is Proper.

Defendant asserts a *Glomar* response under Exemption 7(E) regarding records that would identify individuals on a "watch list." Def.'s Mot. at 22. Exemption 7(E) protects "records or information compiled for law enforcement purposes" to the extent that "production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E).

Defendant argues that disclosing the existence or non-existence of records pertaining to a FOIA requestor's presence on a watch list is sufficient to trigger the protections of Exemption 7(E). Def.'s Mot. at 23. It contends that the knowledge that records exist can be used to deduce one's presence on the watchlist itself, which in turn discloses the "techniques and procedures" that defendant uses for its law enforcement investigations. *Id.* According to defendant, this is because "if an individual knows who is or is not on a watchlist, they can understand what types of behavior are pertinent to placement on a watch list." Second Seidel Decl. ¶ 25.

Plaintiff argues that defendant's *Glomar* response is insufficient for two reasons. First, he argues that defendant has not shown that the records in question are "law enforcement records" as required to trigger Exemption 7(E) protections. Pl.'s Opp. at 26. Second, he argues that because the records released pursuant to his FOIA request precede the creation of the watch list and bear circumstantial evidence of being unrelated to the watch list, the likelihood that responsive records concern the watch list is low. *Id.* at 27.

Both of plaintiff's arguments are unavailing. Defendant avers that "records concerning terrorist watchlists were compiled and created in furtherance of [defendant's] law enforcement and national security functions" because "information contained on terrorist watchlists is used to enable the FBI to perform its core law enforcement and national security related duties." Second Seidel Decl. ¶ 24. Thus, the records for which the *Glomar* response is invoked are law enforcement records for the purpose of Exemption 7(E). *Rhodes v. F.B.I.*, 316 F. Supp. 3d 173, 177 (D.D.C. 2018) (holding "[t]he threshold law enforcement requirement of Exemption 7(E) is without question satisfied" when applied to watchlist records because watchlists are used to support front-line screening agencies in their mission of identifying terrorists). Second, plaintiff's argument that the released records show little evidence of being connected to the watch list, and that this supports the inference that any further records must be unrelated to the watch list, fails. At this stage of litigation, the Court is not required to draw inferences in plaintiff's favor, and it is entirely possible that defendant is in possession of watch list records unrelated to whatever records have already released to plaintiff. The declaration provided by FBI "demonstrate[s] logically," *Blackwell*, 646 F.3d at 42, quoting *Mayer Brown*, 562 F.3d at 1194, why confirming the existence of other responsive records poses a risk to the watch list program, and the Court finds that defendant's *Glomar* response is proper.

### D. Defendant's *Glomar* Response Records that Could Identify or Endanger the Life or Physical Safety of Confidential Sources is Proper.

Finally, defendant asserts a *Glomar* response under Exemptions 7(D), 7(E), and 7(F) for "records concerning confidential sources or [defendant's] confidential human source program." Def.'s Mot. at 23. Exemption 7(D) protects from disclosure records that could "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). Exemption 7(E) exempts law enforcement techniques and procedures from disclosure. 5 U.S.C. § 552(b)(7)(E). Exemption 7(F) protects the release of records that could "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

Defendant explains that Exemption 7(D) warrants a *Glomar* response because the disclosure of existence and non-existence of records would "create a pattern whereby criminals could easily discern who is and is not an FBI [confidential human source]." Second Seidel Decl. ¶ 29. Defendant also argues, as it did with respect to watch lists, that a *Glomar* under Exemption 7(E) is warranted because the existence and non-existence of records about confidential sources could reveal the agency's "non-public investigative strategies." Def.'s Mot. at 24. Finally, defendant argues that Exemption 7(F) warrants a *Glomar* response given the need to protect identifying information about confidential sources and avoid responses that "would endanger the life or physical safety of a [confidential source]". Second Seidel Decl. ¶ 33.

Plaintiff does not address these arguments directly. Rather, he insists that defendant's use of a "standard *Glomar* response" is too broad and "stands counter to the language and spirit of FOIA." Pl.'s Opp. at 29. But since the revelations implicit in more specific responses are exactly what the court-approved *Glomar* response was designed to avoid, it is essential that defendant employs a standard response when a request touches upon an area where *Glomar* is applicable. *See Kalu*, 159 F. Supp. 3d at 23 (holding the use of standard *Glomar* responses appropriate given

that "anything other than a 'neither confirm nor deny' response would tend to disclose [protected information].").  Plaintiff cites no authority holding otherwise, but instead relies solely on his declarant's statement that "identifying and/or singular information could be withheld from production or redacted" and defendant is simply "using *Glomar* as an excuse to not produce the records" in this case.  Coffindaffer Decl. ¶ 20.  Such conclusory and speculative assertions cannot support a grant of summary judgment, and the Court finds that defendant's *Glomar* response is proper to protect the identify and physical safety of confidential sources.

## CONCLUSION

For the foregoing reasons the Court will **GRANT** defendant FBI's motion for summary judgment [Dkt. # 15] and **DENY** plaintiff's cross-motion for summary judgment [Dkt. # 17].  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: February 18, 2025